**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

PATRICK JUSTI, # K-84385,                   )
                                            )
                          **Plaintiff,**    )
                                            )
          **vs.**                           )          **Case No. 16-cv-396-JPG**
                                            )
WEXFORD HEALTH SOURCES,                     )
DR. VIPIN SHAH, DR. BUTALID,                )
DR. MICHAEL ADAMS,                          )
and DR. KURT OSMUNDSON,                     )
                                            )
                          **Defendants.**   )

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Jacksonville Correctional Center ("Jacksonville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  His claims arose while he was confined at Robinson Correctional Center ("Robinson").  Plaintiff is serving a six-year sentence for burglary.  He claims that Defendants were deliberately indifferent to his serious medical condition.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A .

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a).  The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers

to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## **The Complaint**

On December 23, 2014, Plaintiff sought medical treatment for injuries to his left arm and elbow (Doc. 1, p. 6). Defendant Shah examined Plaintiff on December 27, 2014, for what Plaintiff describes as a torn distal tendon.[1] Rather than address the torn tendon directly, Defndant Shah focused on Plaintiff's obesity, and told him that if he would exercise and lose weight, the arm and elbow would feel better.

---

[1] Plaintiff's attached medical records show that he tore his left distal tendon in June 2012 (Doc. 1, p. 36).

Plaintiff notes that he had been treated by an orthopedist in the past for the torn left distal tendon, and had undergone physical therapy. When Plaintiff informed Defendant Shah of this history, Defendants Shah told him to perform physical therapy on his own (Doc. 1, p. 7).

In February 2015, Plaintiff again sought medical attention for his left arm pain, as well as discomfort in his right shoulder. Defendant Shah saw Plaintiff on February 14 and did not address his pain, but did order Plaintiff's previous medical records in relation to the problem with his right shoulder. Plaintiff was to return to see Defendant Shah in three weeks after the records came in.

On April 4, 2015, Defendant Shah reviewed Plaintiff's orthopedic records. As before, his recommendation for Plaintiff's right shoulder pain was to exercise and lose weight.

On April 23, 2015, Plaintiff saw Defendant Dr. Butalid after complaining that the range of motion in his right shoulder was decreasing, and his left arm/elbow problems continued (Doc. 1, p. 8). Defendant Butalid did not evaluate the left arm/elbow problem, but prescribed ibuprofen and prednisone for the right shoulder. Plaintiff asserts that these two drugs interact with each other and should not be taken together.

On May 19, 2015, Plaintiff saw another doctor, Defendant Adams, for the right shoulder and left arm/elbow issues. Plaintiff complained that the left distal tendon tear had been ignored, and that he had a "stabbing sensation" in the front of his right shoulder. He had been taking the prescribed ibuprofen, but it had not worked. Defendant Adams discontinued the ibuprofen but did not give Plaintiff any other pain medication. Defendant Adams' notes claim that he demonstrated exercises that Plaintiff could do for his shoulder and educated him on chronic shoulder injuries. However, Plaintiff disputes both those claims, asserting that he received none of this information (Doc. 1, p. 9).

On June 18, 2015, Plaintiff saw Defendant Osmundson for these ongoing issues, noting that by that time, his shoulder had begun "freezing up" (Doc. 1, p. 10).  Defendant Osmundson prescribed Naproxen 500 mg for the chronic shoulder pain, and ignored the left arm and elbow injury.  Plaintiff notes that the prescribed pain medication "was never ordered."  Defendant Osmundson did order a shoulder x-ray, and advised Plaintiff to do "warm soaks."  *Id*.

On July 2, 2015, Plaintiff advised a nurse that he had not received the prescribed pain medication.  He was referred to Defendant Osmundson again, and saw him on July 9.  He claims that the doctor "dismissed" his complaints of pain in his left arm and elbow.  Plaintiff told him that the previously-prescribed pain medication had not helped, and as a result, Defendant Osmundson wrote in the record that Plaintiff "chooses not to take meds or follow exercises" (Doc. 1, pp. 11, 63).  Plaintiff disputes this, stating that he has never refused pain medication, and that he was never shown what exercises or physical therapy he should perform.

Plaintiff again put in for sick call for these problems on July 10, 2015.  However, he was transferred to Jacksonville on July 15, 2015, before he was called to the health care unit.  At Jacksonville, Plaintiff sought medical care again, and was sent to a specialist and physical therapist, who found that Plaintiff had decreased shoulder strength and range of motion, as well as a frozen shoulder.  He was also sent to a specialist for the left arm/elbow pain, and was diagnosed by a physical therapist with decreased elbow and wrist extension (Doc. 1, p. 12).

In a "Memorandum of Law" that follows the complaint, Plaintiff asserts that Defendant Wexford Health Sources ("Wexford") maintained a custom/practice of intentionally denying treatment of Plaintiff's left arm and elbow problems, which caused the individual Defendant doctors to fail to treat this condition (Doc. 1, p. 18).

Plaintiff seeks compensatory and punitive damages (Doc. 1, p. 13).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:**   Eighth Amendment claim against Defendant Shah for deliberate indifference to Plaintiff's left arm and elbow pain, and right shoulder pain;
>
> **Count 2:**   Eighth Amendment claim against Defendant Butalid for deliberate indifference to Plaintiff's left arm and elbow pain, and right shoulder pain;
>
> **Count 3:**   Eighth Amendment claim against Defendant Adams for deliberate indifference to Plaintiff's left arm and elbow pain, and right shoulder pain;
>
> **Count 4:**   Eighth Amendment claim against Defendant Osmundson for deliberate indifference to Plaintiff's left arm and elbow pain, and right shoulder pain;
>
> **Count 5:**   Eighth Amendment claim against Defendant Wexford Health Sources, for maintaining a custom or practice that caused the Defendants in Counts 1-4 to fail to treat Plaintiff's left arm and elbow pain;

Several of the claims in Counts 1-4 shall receive further review.  However, Count 5 shall be dismissed without prejudice at this time.

**Deliberate Indifference to a Serious Medical Condition**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may

constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).   A defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.  *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

The mere fact that a prescribed treatment has proven ineffective does not rise to the level of deliberate indifference.  *Duckworth*, 532 F.3d at 680; *but see Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (lengthy course of ineffective treatment, and refusal to order testing or specialist referral over a two-year period during which plaintiff suffered from ulcer suggested deliberate indifference).   A prisoner's disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment.  *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not takes sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Similarly, a difference of opinion between medical professionals concerning the treatment of an inmate will not support a claim for deliberate indifference.  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Garvin*, 236 F.3d at 898.

In Plaintiff's case, the conditions of his shoulder, arm, and elbow, which caused him pain

and restricted his range of motion, were serious and persistent enough to need medical attention. The complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether Plaintiff's prison medical providers acted or failed to act with deliberate indifference to a known risk of serious harm.

**Count 1 – Defendant Shah**

Defendant Shah's recommended treatment for Plaintiff's left arm injury (which Plaintiff alleges involved a torn tendon) and right shoulder pain was for Plaintiff to lose weight and exercise. He did not provide Plaintiff with any other treatment for his pain. At this stage of the case, it is not possible to determine whether Defendant Shah's approach fell within the range of reasonable treatment for these conditions, or amounted to deliberate indifference to a risk of serious harm. Further factual development is appropriate, and Plaintiff may proceed with his claim against Defendant Shah.

**Count 2 – Defendant Butalid**

Defendant Butalid addressed Plaintiff's right shoulder symptoms by prescribing ibuprofen and prednisone. Plaintiff's only argument with this action is to complain that he should not have been given these two drugs together. This disagreement with Defendant Butalid's prescribed treatment does not support a deliberate indifference claim.

On the other hand, Plaintiff claims that Defendant Butalid did not even evaluate, let alone treat, the ongoing symptoms he had with his left arm and elbow. Because this lack of attention may indicate deliberate indifference, Plaintiff may proceed against Defendant Butalid only in reference to the left arm/elbow condition.

**Count 3- Defendant Adams**

According to Plaintiff, Defendant Adams discontinued the pain medication that had been

previously prescribed, but did not give him any alternative medication for his pain.  Taking
Plaintiff's allegations as true, Defendant Adams also failed to show Plaintiff any exercises that
might help his condition, and did not provide him with any education on his chronic injury.  In
summary, Plaintiff claims that he got no treatment at all from Defendant Adams.  At this stage,
the deliberate indifference claim in **Count 3** may also proceed for further consideration.

**Count 4 – Defendant Osmundson**

Defendant Osmundson initially responded to Plaintiff's complaints of a frozen right
shoulder by prescribing Naproxen, ordering an x-ray of the shoulder, and telling Plaintiff to do
warm soaks.   These treatments appear to be appropriate, and do not suggest deliberate
indifference to Plaintiff's right shoulder condition.   While Plaintiff complains that he did not
receive the Naproxen, there is no indication that Defendant Osmundson was responsible for the
failure to provide Plaintiff with that medication.

Plaintiff claims that like the previous doctors, Defendant Osmundson did nothing for his
left arm/elbow injury.  It is possible that the recommended Naproxen may have been directed at
the left arm/elbow pain as well as the right shoulder pain, had it been provided.  As with Count 2,
the doctor's alleged lack of attention to Plaintiff's left arm injury might support a claim of
deliberate indifference, but this cannot be determined at this early stage of the case.

Plaintiff's final allegation regarding Defendant Osmundson is that the doctor falsely
stated in his notes that Plaintiff refused to take the recommended medications or follow the
exercises.  Such a statement in the medical records does not, in and of itself, show that the doctor
was deliberately indifferent to Plaintiff's medical condition.  The pertinent question is whether or
not Defendant Osmundson discontinued or failed to provide necessary pain medication or other
treatment.  Plaintiff does not state what Defendant Osmundson actually did, during this second

visit on July 9, 2015, with reference to the pain medication Plaintiff had been offered or previously prescribed.  He merely says that the doctor "dismissed" his complaints of pain in his left arm and elbow.

At this stage, Plaintiff's allegations that Defendant Osmundson was deliberately indifferent to his left arm/elbow condition merit further review.  It is unclear whether this Defendant's treatment of Plaintiff's right shoulder condition fell below constitutional standards. **Count 4** may proceed in this action.

**Count 5 – Defendant Wexford Health Sources**

Defendant Wexford Health Sources ("Wexford") is a corporation that employs Defendants Shah, Butalid, Adams, and Osmundson, and provides medical care at the prison, but it cannot be held liable solely on that basis.  A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right.  *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).  *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Here, Plaintiff has alleged that Defendant Wexford had a "custom/practice of intentionally denying treatment of Plaintiff's left arm/elbow injuries" which was the "direct cause of the constitutional violation[s]" on the part of the individual Defendants (Doc. 1, p. 18). However, he offers no facts to support his conclusion that Defendant Wexford maintained a policy or custom directed specifically at Plaintiff to deny treatment of one of Plaintiff's ailments (the left arm/elbow injury), while allowing some treatment to be given for the other, similar condition (his right shoulder pain).

Plaintiff's claim regarding Defendant Wexford's alleged policy to partially deny his

treatment is an example of the type of conclusory statement that cannot survive threshold review under § 1915A. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (a court "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must include factual content to support the claim of misconduct); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 557 (2007) (a claim must cross "the line between possibility and plausibility"). Accordingly, **Count 5** against Defendant Wexford shall be dismissed from the action without prejudice.

## Pending Motions

Plaintiff's motions for recruitment of counsel (Docs. 3 and 7) shall be referred to the United States Magistrate Judge for further consideration.

## Disposition

**COUNT 5** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  Defendant **WEXFORD HEALTH SOURCES** is **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **SHAH, BUTALID, ADAMS,** and **OSMUNDSON**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the

Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motions for recruitment of counsel.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that

his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 18, 2016**

<u>*s/J. Phil Gilbert*</u>
United States District Judge